1
2
3
4                    UNITED STATES DISTRICT COURT
5                  NORTHERN DISTRICT OF CALIFORNIA
6
7  CEMENT MASONS PENSION TRUST          Case No.  14-cv-03281-JCS
   FUND FOR NORTHERN CALIFORNIA, et
8  al.,
              Plaintiffs,               REPORT AND RECOMMENDATION
9                                       RE MOTION FOR DEFAULT
       v.                               JUDGMENT
10
   RICHARD RAY GARCIA, et al.,          Re: Dkt. No. 22
11
              Defendants.
12

13 **I.    INTRODUCTION**

14        In this ERISA enforcement action, Plaintiffs bring a Motion for Default Judgment (the

15 "Motion") seeking entry of default judgment and an order awarding unpaid employee benefit

16 contributions, liquidated damages, interest,  attorneys' fees and costs, and an audit against

17 Defendants Richard Ray Garcia and Cindy Garcia, individually, and doing business as R&C

18 Construction, A Partnership ("R&C"), and against R&C.   The Motion came on for hearing on

19 Friday, February 27, 2015 at 2:00 p.m.  Plaintiffs submitted supplemental materials in support of

20 the Motion on March 13, 2015 and on April 3, 2015.  Because Defendants did not appear or

21 consent to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c), this

22 case is ordered reassigned to a district judge with the following Report and Recommendation.  For

23 the reasons stated below, it is recommended that the Motion be GRANTED in part and DENIED

24 in part.

25 **II.   BACKGROUND**

26        **A.    Facts**

27        In the Complaint, the following trust funds are named as Plaintiffs: (1) Cement Masons

28 Health and Welfare Trust Fund for Northern California; (2) Cement Masons Pension Trust Fund

for Northern California ; (3) Cement Masons Vacation/Holiday Trust Fund for Northern California; and (4) Cement Masons Apprenticeship and Training Trust Fund for Northern California (collectively, "the Trust Funds"). Complaint at 2. The Trust Funds are employee benefit plans within the meaning of sections 3, 4, and 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002, 1003 and 1132. *Id.*

Plaintiffs allege that Richard Ray Garcia, Cindy Garcia and R&C have been employers within the meaning of section 3(5) and section 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145. *Id.* They further allege that on May 26, 2011, Richard Garcia, on behalf of R&C, signed a Memorandum Agreement, effective April 12, 2011, with the District Council of Plasterers and Cement Masons of Northern California ("Memorandum Agreement") agreeing to be bound by the 2009-2013 Cement Masons Master Agreement for Northern California  ("Master Agreement") and any "future modifications, changes, amendments, supplements, extensions or renewals" of the Master Agreement.   Complaint at 2-3; *see also* Declaration of Michelle Lauziere in Support of Motion for Default Judgment ("Lauziere Decl") ¶4 & Ex. A (Memorandum Agreement) & Ex. B (Master Agreement). Under the Memorandum Agreement and the Master Agreement, Defendants also agreed to be bound by the Trust Agreements that created the Trust Funds and to pay required fringe benefit contributions to the Trust Funds, in San Francisco, California, for all hours worked by work covered under the Master Agreement. *See* Lauziere Decl., Ex.  A (Memorandum Agreement); *id.*, Ex. B (Master Agreement), Section 8;  *id.*, Ex. C (Trust Agreements), Article II, Sections 9-10. Under the Trust Agreements, employers are required to report the contributions due and make payments no later than the 25th day of the following month;  if payments are not made by that date they become delinquent. Lauziere Decl. Ex. C (Trust Agreements), Article II, Sections 9-10.

The Master Agreement also provides for liquidated damages and interest on delinquent contributions, stating in Section 8(G) as follows:

> All delinquent contributions shall bear simple interest at the rate of one and one-half percent (1.5%) per month until receipt of payment. Subject to account verification, liquidated damages shall be assessed on delinquent contributions at a flat rate of one hundred and fifty dollars ($150.00) per month to reflect the internal administrative

United States District Court
Northern District of California

2

1    costs incurred by the trust administrators in monitoring and tracking
     such late contributions.

2    Lauziere Decl., Ex. B (Master Agreement), Section 8(G)(2).[1]  The Master Agreement further

3    provides for an audit of the books and records of signatory employers so that the Trust Funds may

4    determine if the employer is making full and prompt payment of required contributions.  Lauziere

5    Decl. ¶ 15 & Ex. B (Master Agreement), Section 8(G).  Finally, the Trust Agreements provide that

6    "[i]f an individual Employer defaults in the making of Contributions or payments and if the Board

7    consults legal counsel, there shall be added to the obligation of the Individual Employer who is in

8    default, reasonable attorneys' fees, costs and all other reasonable expenses incurred in connection

9    with the suit or claim . . . ."  Lauziere Decl., Ex. C, Article IV, Section 3.

10          In the Complaint, Plaintiffs alleged that Defendants failed to make contributions that were

11   required under the Master Agreement and Trust Agreements "of at least $4,435.53 for September

12   2013 through January 2014."  Complaint at 3.  In addition, Plaintiffs alleged that Defendants owed

13   liquidated damages and interest for contribution paid but paid late of at least $354.60 and

14   additional liquidated damages and interest on contributions that were reported but not paid of at

15   least $951.00.  *Id.*  Plaintiffs asserted the following claims: 1) breach of contract based on

16   Defendants' alleged failure to pay fringe benefit contributions owing under the applicable

17   agreements and ERISA; 2) actual damages for breach of contract; 3) audit.  *Id.* at 3-4.  In their

18   prayer, Plaintiffs requested an order requiring Defendants to pay: 1) unpaid contributions in the

19   amount of $4,435.53;  2) $504.60[2] in liquidated damages and interest on late contributions and

20   $951.00 in liquidated damages and interest on contributions that were reported but were not paid;

21   and 3) attorneys' fees and costs.  *Id.* at 5.  In addition, Plaintiffs asked the Court to issue an order

22   enjoining Defendants: 1) to submit to an audit; and 2) to timely submit contribution reports and

23   make contribution payments going forward.  *Id.*

---

[1] This provision was adopted on December 8, 2000 and was adopted after the Board of Trustees commissioned a study by an accounting firm to determine the cost of collections and the loss to the Trust Funds caused by delinquent employee contributions.  Supplemental Declaration of Jennifer Peters in Support of Plaintiffs' Motion for Default Judgment ("Peters Supp. Decl.") ¶ 7.

[2] This amount does not match the amount stated on page 3 of the Complaint.

United States District Court
Northern District of California

3

**B.      Procedural Background**

Plaintiffs filed the Complaint in this action on July 21, 2013.  On August 6, 2014, Plaintiffs served Richard Ray Garcia, individually and dba R&C Construction, a Partnership, and Cindy Garcia, individually and dba R&C Construction, a Partnership, by leaving copies of the summons and complaint with Richard Ray Garcia at 5069 E. Hammond Avenue, Fresno, CA 93727 and also mailing copies of the pleadings to Cindy Garcia by First Class mail to the same address.  Docket Nos. 11-12.  Defendants did not answer or otherwise respond and the Clerk entered default against them on October 21, 2014.  *See* Docket No. 17. Plaintiffs filed the instant Motion on December 31, 2014.

In the Motion, Plaintiffs ask the Court to enter default judgment against Ray Garcia, individually and dba R&C, Cindy Garcia, individually and dba R&C, and R&C.  They ask the Court to award: 1) $4,435.53 in unpaid contributions for the months of September 2013 to January 2014; 2) $450.00 in liquidated damages and $825.40 in interest on unpaid contributions for the same period; and 3) $150.00 in liquidated damages and $204.60 in interest on payments that were made late for the months of August 2013[3] and February 2014.   Motion at 3.   Plaintiffs also request $6,050.00 in attorneys' fees (including fees Plaintiffs anticipate they will incur) and $905.20 in costs.  *Id*.  In addition, Plaintiffs ask the Court to order that Defendants be required to submit to an audit and to retain jurisdiction over this action to ensure payment of any amounts due and owing.  *Id*.

**III.    ANALYSIS**

**A.      Entry of Default Judgment**

**1.  Legal Standard**

Plaintiffs have applied for a default judgment in this action on the basis that Defendants failed to plead or otherwise defend or appear after valid service.  Under Federal Rule of Civil

---

[3] Although the Motion refers to a late contribution for April 2013, the Lauziere Declaration and supporting chart in Exhibit F refers to August 2013 (and not April 2013).  At the Motion hearing, Plaintiffs stipulated that the reference to April 2013 was a clerical error and that they were seeking liquidated damages and interest for late payment of the August 2013 contributions, not the April 2013 contributions.

Procedure 55(b)(2), the court may enter a default judgment once the Clerk, under Rule 55(a), has entered the party's default based upon a failure to plead or otherwise defend the action.  Fed. R. Civ. P. 55(b)(2).  If the court is satisfied that jurisdiction is proper and that service of process upon the defendant was adequate, it then considers the following factors in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  In making its decision, the court takes all factual allegations in the complaint, except those relating to damages, as true.  *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).  Where a court finds that default should be granted, it may award damages if the plaintiff satisfies its burden of proving the damages through evidence. *See id.*

### 2.  Jurisdiction

Plaintiffs bring this action pursuant to ERISA, 29 U.S.C. § 1132, and therefore, the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.  In the Motion, Plaintiffs asserted that there is personal jurisdiction because "Defendant is a California Corporation that engages in business activities in the Northern District of California and plan contributions are due and payable in the County of San Francisco."  Motion at 5.  Plaintiffs did not address the question personal jurisdiction over the individual defendants.   At the Motion hearing, the Court asked Plaintiffs to address the discrepancy between the Complaint (alleging that R&C was a partnership) and the Motion (stating that it was a corporation) and to provide evidence that there was jurisdiction over the individual defendants.

Following the Motion hearing, Plaintiffs clarified that R&C is a general partnership (as alleged in the Complaint) that is domiciled in and conducts business in California and that Ray Garcia and Cindy Garcia were the general partners of R&C.  Peters Supp. Decl. ¶¶ 4-5.  Plaintiffs

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1    also provided: 1) a California Contractors State License Board record, purportedly current as of

2    March 11, 2015, showing that R&C was a partnership located at 2946 S. Elm Ave., Fresno

3    California, that Cindy and Ray Garcia were partners, and that the partnership disassociated on

4    June 2, 2014; and 2) a Fictitious Business Name record, purportedly last updated August 30, 2013,

5    showing that Ray and Cindy Garcia were owners of R&C,  a general partnership, and that the

6    business was located at 5069 E. Hammond, Fresno, California.   Peters Supp. Decl., Exs. A & B.

7    Plaintiffs asserted in their supplemental brief that they had personal jurisdiction over R&C

8    because it is domiciled and engages in business in the Northern District of California and over

9    Cindy and Ray Garcia because they were "domiciled in California at the time the action was

10   commenced" and because they were personally served in California.  Supplemental Brief in

11   Support of Plaintiffs' Motion for Default Judgment ("Supp. Brief") at 2 (citing *Milliken v. Meyer*,

12   311 U.S. 457, 462-463 (1940); *Burnham v. Superior Court*, 495 U.S. 604, 629 (1990)).

13        "[J]urisdiction over each defendant must be established individually." *Sher v. Johnson*, 911

14   F.2d 1357, 1365 (9th Cir.1990).  In *Sher*, the court held that while it had jurisdiction over a

15   partnership, it did not have jurisdiction over the individual members of the partnership. *Id*. at

16   1366.  The court explained that while the contacts with the forum of a partner may be imputed to

17   the partnership for the purposes of personal jurisdiction, the reverse is not true. *Id*.  Rather, there

18   is jurisdiction over the individual partners only if they have "personally established the requisite

19   minimum contacts with California." *Id*.  Thus, Plaintiffs must demonstrate that there is personal

20   jurisdiction not only as to R&C but also as to Ray Garcia and Cindy Garcia as individuals.

21        As discussed below, Plaintiffs have personally served Ray Garcia in California.  As a

22   result, this Court may exercise personal jurisdiction over Ray Garcia.  *See Burnham v. Superior*

23   *Court*, 495 U.S. 604, 619 (1990) ("jurisdiction based on physical presence alone constitutes due

24   process because it is one of the continuing traditions of our legal system that define the due

25   process standard of 'traditional notions of fair play and substantial justice'").  Service on Ray

26   Garcia is likely sufficient to establish personal jurisdiction over R&C as well because he was a

27   partner of R&C.  *See First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16,19 (2d Cir.

28   1998) (holding that there was personal jurisdiction over partnership based on personal service on

partner);  *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1069 (9th Cir. 2014) (holding that personal service on corporate officer did not give rise to jurisdiction over corporation under *Burnham* but declining to decide whether the Ninth Circuit agrees with the holding of *First American* and noting that "partnerships differ from corporations in the important respect that 'a partnership (unlike a corporation) has no separate existence' from its partners").  Even if service on Ray Garcia did not establish personal jurisdiction over R&C, however, the Court finds that there is evidence that R&C is domiciled in California, giving rise to general jurisdiction.  *See Panavision Intern., L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir. 1998) ("General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic'") (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)).  Finally, the court finds that as a general partner, Cindy Garcia is subject to jurisdiction in California because, by acting as a general partner in a partnership that is based in and does business in California, she has purposefully availed herself of the privilege of conducting activities within the forum and Plaintiffs' claims arise out of those activities.  *See  Sher*, 911 F.2d at 1362 (citations omitted).

### 3.  Service

Rule 4(e) of the Federal Rules of Civil Procedure provides that an individual may be served in any judicial district of the United States by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
> >
> > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> >
> > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R.Civ. P. 4(e).  Rule 4(h) provides that a partnership also may be served under the law of the state in which the district court is located.  Fed.R.Civ.P. 4(h)(1)(A).  In the alternative, a

United States District Court
Northern District of California

7

1   partnership may be served "by delivering a copy of the summons and of the complaint to an

2   officer, a managing or general agent, or any other agent authorized by appointment or by law to

3   receive service of process and – if the agent is one authorized by statute and the statute so requires

4   –by also mailing a copy of each to the defendant." Fed.R.Civ. P. 4(h)(1)(B).

5          With respect to Defendant Ray Garcia as an individual, service is proper under Rule

6   4(e)(2)(A) because the proof of service reflects that he was personally served. Because Ray

7   Garcia is a partner of R&C, service is also proper as to the partnership under Fed.R.Civ.P.

8   4(h)(1)(B). Plaintiffs have not, however, established that service was proper as to Cindy Garcia.

9   Plaintiffs cite Fed.R.Civ.P. 4(e)(2)(B) and (C), asserting that service was proper because they

10  served the complaint on Ray Garcia at Cindy Garcia's dwelling and also mailed a copy to that

11  address.  Supp. Brief at 3.   They have not, however, offered any evidence that Cindy Garcia

12  currently resides at the address where Ray Garcia was personally served, despite the fact that the

13  Court specifically requested at the Motion hearing that Plaintiffs provide such evidence.

14  Therefore, the Court concludes that service on Cindy Garcia (as an individual and doing business

15  as R&C) was not adequate and that default judgment should not be entered against her.[4]

16         **4.  *Eitel* Factors**

17         Plaintiffs' claims for money damages and an audit, based on both common law breach of

18  contract and under ERISA are well-pleaded as to R&C and appear to be meritorious as to that

19  Defendant. *See* 29 U.S.C. § 1132, 1145. Plaintiffs have provided evidence that R&C was bound

20  by a collective bargaining agreement that required it to pay fringe benefit contributions and to

21  submit to an audit upon request. They have also presented evidence that R&C failed to timely pay

22  _____

23  [4] To the extent that Plaintiffs have not established that Cindy Garcia received adequate service,
    default judgment should not be entered against her, either as an individual or doing business as

24  R&C. Nevertheless, any judgment against the partnership remains valid to the extent of her
    interest in the partnership and her possession of partnership assets. *See Promotus Enterprises, Inc.*

25  *v. Jiminez*, 21 Cal.App.3d 560, 566-567 (1971) (holding that partner could not be individually
    bound, over and above his interest in the partnership, where it was not clear that he had received

26  actual notice of the action); *see also Maglo v. Weaver*, 11 N.J.Super. 32 (1950) (holding that
    substitute service was not sufficient where there was no evidence that defendant resided at address

27  where complaint was left and therefore holding that judgment against that individual was void,
    even though he was a partner and another partner had received valid service and appeared in the

28  action to defend the partnership).
    .

United States District Court
Northern District of California

1    these contributions and that at the time the action was filed there were contributions owed to

2    Plaintiffs.   Therefore, *Eitel* factors two and three support entry of default judgment against R&C.

3    Further, because Plaintiffs have provided evidence that Ray Garcia was a partner of R&C, he also

4    may be held liable for R&C's failure to pay required fringe benefit contributions under ERISA.

5    *See* Cal. Corp. Code § 16306(a) (providing that all partners are jointly and severally liable for "all

6    obligations of the partnership unless otherwise agreed by the claimant or provided by law").

7    Consequently, factors two and three also support entry of default judgment against Ray Garcia.[5]

8            Other *Eitel* factors also support entry of default judgment as to R&C and Ray Garcia.

9    Failure to enter default judgment in favor of Plaintiffs would result in prejudice to Plaintiffs

10   because they would be unable to collect on sums to which they are entitled under the Plan and

11   ERISA. Further, although default judgment is discouraged when the amount of money at stake is

12   substantial, so long as the amount is reasonable, properly documented, and contractually justified,

13   default judgment is warranted.  *See Board of Trustees of Cal. Metal Trades v. Pitchometer*

14   *Propeller*, 1997 WL 797922, at *2 (N.D. Cal. 1997).   As discussed above, Plaintiffs' request for

15   withdrawal liability and related damages is both well-documented and contractually justified, and

16   therefore, this factor also supports entry of default judgment.   Nor is there any evidence that

17   Defendants' failure to answer or appear in this action was the result of excusable neglect.

18           Accordingly, it is recommended that default judgment be entered against R&C and Ray

19   Garcia.

20       **B.    Remedy**

21            **1.   Section 1132(g)**

22           Once liability is established through a defendant's default, a plaintiff is required to

23   establish that the requested relief is appropriate.  *Geddes v. United Fin. Group*, 559 F.2d 557, 560

24   (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).  Under ERISA, an employee

25   benefit plan that obtains judgment in its favor in an action for unpaid contributions under 29

26   U.S.C. § 1145 is entitled to the following forms or relief:

27

28   ———————————
     [5] Because the Court finds that service was inadequate as to Cindy Garcia, it does not apply the
     *Eitel* factors to that defendant.

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of –

    (1) interest on the unpaid contributions, or

    (2) liquidated damages provided for under the plan in an amount not in excess of 20

    percent . . . of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).  This section further provides that "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26. *Id.*

### 2. Contributions

Plaintiffs must submit proof of their damages. *TeleVideo*, 826 F.2d at 917-18; *Geddes*, 59 F.2d at 560.  In the Motion, Plaintiffs seek $4,453.53 in unpaid contributions for September 2013, November 2013, December 2013 and January 2014.  Lauziere Decl. ¶ 10 & Ex. D.  In support of the amounts requested, Plaintiffs have provided print-outs of the online reports that were submitted by R&C for these months.  *See* Supplemental Declaration of Michelle Lauziere in Support of Plaintiffs' Motion for Default Judgment, ¶¶ 5-8 & EXs. A-D.  Therefore, it is recommended that this amount be awarded in full.

### 3. Liquidated Damages

Plaintiffs seek $450.00 in liquidated damages on unpaid contributions for the months of November 2013, December 2013 and January 2014 and another $150 in liquidated damages for late contributions for February 2014. See Lauziere Decl. ¶¶ 11-12 & Exs. E, F.  As discussed above, the Master Agreement provides for liquidated damages at a flat rate of $150 for every month that payment is delinquent.  Plaintiffs have provided evidence that Defendants were delinquent in their payments for the months listed above. *See* Peters Supp. Decl., ¶¶ 11-14 & Exs. F-H.  Therefore, it is recommended that the Court award $600.00 in liquidated damages.

United States District Court
Northern District of California

United States District Court
Northern District of California

### 4.  Interest

Under 29 U.S.C. § 1132(g), Plaintiffs are entitled to interest under ERISA for contributions that are unpaid at the time the action was filed, even if the contributions are later paid.  *See Idaho Plumbers*, 875 F.2d at 215.   Further, as discussed above, the Court has found that interest is available under ERISA on unpaid and late-paid contributions that accrued after the complaint was filed.  *See Board of Trustees of Bay Area Roofers Health & Welfare Trust Fund v. Westech Roofing*, 2014 WL 2085339, at *6 (N.D.Cal., May 19, 2014).   Finally, to the extent Plaintiffs have calculated the interest amounts using the rate of 1.5% per month, as set forth in the Master Agreement, this amount has been found to be reasonable under other collective bargaining agreements.  *See, e.g.,  Board of Trustees of Laborers Health and Welfare Trust Fund for Northern Cal. v. Shade Const.*, 2007 WL 3071003, at *8 (N.D. Cal., Oct. 19, 2007).  The evidence provided in support of Plaintiffs' interest request is conflicting, however.

In their Motion, Plaintiffs requested the following amounts in interest on late and unpaid contributions:  1) August 2013 - $204.60; 2) September 2013 -  $300.01; 3) November 2013 - $118.81;  4) December 2013 - $273.78; and 5) January 2014 - $ 132.80.  *See* Lauziere Decl., ¶¶ 11-12, Exs. E & F.  In their Supplemental materials, however, the detailed calculations of interest that are provided for these months are generally lower, with the exception of August 2013: 1) September  2013 -  $265.96; 2) November 2013 - $63.56; 3) December 2013 -  $121.68; 4) January 2014 - $49.80.  *See* Peters Supp. Decl., Exs. E-H.  According to Plaintiffs, the calculations provided in the original materials started on the date the contributions became delinquent and ended on May 25, 2014.  *See* Lauziere Decl., Exs. E & F.  The interest calculations provided in the supplemental materials end on May 27, 2014.  *See* Peters Supp. Decl., Exs. E-H.  Because the numbers that were originally provided are not supported by any details as to how interest was calculated, the Court concludes that the amounts provided in the supplemental materials should be awarded for the months of September 2013, November 2013, December 2013 and January 2014, that is, a total of $501.00.  For the month of August 2013, the amounts reflected in the exhibit provided with Plaintiffs' original materials for the individual funds match those reflected in the supplemental materials except that Plaintiffs did not include in the earlier figure the interest for the

United States District Court
Northern District of California

1   Pension Fund, even though the supplemental materials reflect interest owed on that fund in the

2   amount of $134.59.  Compare Lauziere Decl., Ex. F with Peters Supp. Decl., Ex. D.  As Plaintiffs

3   apparently do not seek to recover the interest reflected in their supplemental materials for the

4   Pension Fund contributions, it is recommended that the Court award in interest the $204.60 that is

5   requested in Plaintiffs' original motion papers.  Accordingly, it is recommended that the Court

6   award $705.60 in interest.

7           **5.  Attorneys' Fees**

8           Plaintiffs are entitled to attorneys' fees under ERISA and the Trust Agreements.  29 U.S.C.

9   § 1132(g)(2)(D);  Lauziere Decl. ¶ 14, Ex. C (Trust Agreements),  Article IV, Section 3.  Plaintiffs

10  request $4,750.00 in attorneys' fees for a total of 16 hours of work performed as of December 31,

11  2014.  Motion at 10; Declaration of Kristina M. Zinnen in Support of Plaintiffs' Motion for

12  Default Judgment ("Zinnen Decl."), ¶ 5.   This amount includes the following fees: 1) $326.25 for

13  work performed by Teresa Rojas Alou, Senior Paralegal (2.25 hours at a rate of $145.00 per hour);

14  2) $4,143.75 for work performed by Kristina M. Zinnen, Shareholder (12.75 hours at a rate of

15  $325.00 per hour); 3) $243.75 for work performed by Barry E. Hinkle, Shareholder (.75 hours at a

16  rate of $325.00 per hour);  4) $36.25 for work performed by Aaron Nathan, Senior Paralegal (.25

17  hours at a rate of $145.00 per hour).  *Id*.  In addition, Plaintiffs request $4,062.50 in fees for work

18  performed by Ms. Zinnen (12.5 hours at a rate of  $325.00/hour) in connection with supplemental

19  materials that were submitted after the Motion hearing.  *See* Supplemental Declaration of Kristina

20  M. Zinnen In Support of Plaintiffs' Motion for Default Judgment ("Zinnen Supp. Decl.") ¶ 2.

21          The Court finds the requested rates and amounts to be reasonable.  For the fees sought on

22  work prior to the Motion hearing, Plaintiffs have provided detailed time sheets showing the time

23  and tasks performed by each attorney and paralegal for which it seeks fees.  Zinnen Decl., Ex. A.

24  For the fees incurred after the Motion hearing, a time break-down describing the tasks performed

25  is included in the Zinnen supplemental declaration.  Further, Plaintiffs have described in a

26  declaration the level of experience for each attorney and paralegal.  *See* Zinnen Decl., ¶¶ 6 - 9.

27  Courts in this district, in similar cases, have awarded the same or similar hourly rates requested in

28  this case.  *See Bd. of Trustees v. Cal-Kirk Landscaping, Inc*., Case No. C-08-3292 EMC, Docket

No. 95 (awarding $345 per hour to Kristina Zinnen); *Bd. of Trustees v. C & L Coatings*, No. 12-1368 (MEJ), 2012 WL 7748318, at *10 (N.D. Cal. Dec. 18, 2012), *report and recommendation adopted*, 2013 WL 1087849 (N.D. Cal. March 13, 2013) (awarding $345 per hour to Mr. Barry Hinkle);   *Bd. of Trustees v. LML Enterprises, Inc.*, Case No. C-13-3117 RS, Docket No. 30 (Report and Recommendation recommending that fees be awarded for work by Teresa Rojas Arou at rate of $145/hour) and 37 (adopting Report and Recommendation).  Therefore, it is recommended that the attorneys' fees requested by Plaintiffs, in the amount of  $8,812.50, be awarded in full.

### 6.  Costs

Plaintiffs request costs in the amount of $905.20.  Zinnen Decl., ¶ 11 & Ex. B. The costs listed in the Schedule of Costs provided by Plaintiffs fall into the following categories: 1)  filing fees ($400.00); 2) costs of service of documents  ($442.90); 3)  copy costs and delivery service incurred in connection with providing chambers copies of filed documents ($62.30).   Under Civil Local Rule 54-3, an award of costs may include the clerk's filing fee and fees for service of process "to the extent reasonably required and actually incurred."  In addition, the Trust Agreements provide for the recovery of all expenses incurred in collection.   The Court concludes that the costs requested by Plaintiffs are reasonable and therefore recommends that they be awarded in full.

### 7.  Audit

The Supreme Court has held that where a collective bargaining agreement gives the trustees of an employee benefit plan the right to audit an employer's books and records, it will be enforced.  *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 569 (1985).  Here, the Master Agreement expressly provides that a signatory employer shall submit to an audit of its records upon request. *See* Lauziere Decl., Ex. B (Master Agreement), Section 8(G). Therefore, it is recommended that the Court issue an order compelling Defendants to submit to a full audit.   The Court does *not* recommend, however, that the injunction include an order that Defendants "pay all amounts found due and owing as a result of said audit of its books and records pursuant to the Trust Agreements," as requested in Plaintiffs' proposed order.  *See* Docket No. 36,

United States District Court
Northern District of California

¶ 4. Judges in this district have likened provisions such as this to a "blank check" and have declined to award such relief.   *See, e.g., Bay Area Painters and Tapers v. Brown*, 2007 WL 1302982, at \*3 (N.D.Cal., May 3, 2007) (Alsup, J.) (Finding that proposed injunction amounted to a "blank check" where Plaintiffs would "fill in the amount of that 'check' when they later determine the contributions due" and declining to award requested relief);  *Board of Trustees in their capacities as Trustees of Laborers Health and Welfare Trust  v. Geotech Const., Inc*.,  2008 WL 3496474, at \*2 (N.D.Cal., July 18, 2008) (Zimmerman, J.) (same).  As Judge Alsup noted in *Brown*, "Plaintiffs may demand that defendant comply with [the provisions of the collective bargaining agreement] once they determine the amount of damages owed. If defendant fails to comply at that time, plaintiffs may seek to enforce the determined amount at that time."  2007 WL 1302982, at \*5.

**IV.      CONCLUSION**

    For the reasons stated above, it is recommended that the Motion be GRANTED in part and DENIED in part.  Because service was inadequate as to Defendant Cindy Garcia as an individual, that Defendant should be dismissed without prejudice.  As to R&C and Ray Garcia, it is recommended that the Court GRANT Plaintiffs' request for entry of default judgment and award the following relief:  1) unpaid contributions in the amount of $4,435.53; 2) liquidated damages in the amount of $600.00; 3) interest in the amount of $705.60; 4) attorneys' fees in the amount of $8,812.50; and 5) costs in the amount of $905.20.  In addition, it is recommended that the Court GRANT Plaintiffs' request for injunctive relief as set forth in their proposed order, Docket No. 36, at 3:6-3:14.  It is further recommended, however, that the Court omit from its Order the language contained in Paragraph 4 of the Proposed Order, requiring Defendant to "pay all amounts found due and owing as a result of said audit of its books and records pursuant to the Trust Agreements."

United States District Court
Northern District of California

14

Finally, it is recommended that the Court retain jurisdiction over this action so that Plaintiffs may seek amendment of the judgment, if appropriate, following an audit.

**IT IS SO ORDERED.**

Dated:  May 15, 2015

_____

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

15